

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | | |
|---|---|---|
| THOMAS BULLOCK, | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 3:23-5374-MGL |
| | § | |
| DEPUTY CHRISTOPHER SINCENO | § | |
| and DEPUTY JOHN HASTINGS, | § | |
| Defendants. | § | |

**ORDER ADOPTING THE REPORT AND RECOMMENDATION,
GRANTING DEFENDANTS' MOTION IN LIMINE,
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT,
AND DISMISSING ONE OF THE DEFENDANTS**

## I.    INTRODUCTION

Plaintiff Thomas Bullock (Bullock) brought this 42 U.S.C. § 1983 action against Defendants Deputy Christopher Sinceno (Sinceno) and Deputy John Hastings (Hastings).

In Bullock's lawsuit, he alleges Sinceno violated his constitutional rights during his October 27, 2021, arrest. Sinceno is a Richland County Sheriff's Department (RCSD) K-9 specialist.

Bullock's claims in this matter concern Sinceno's use of K-9 Riko during his arrest. He contends the evidence demonstrates a reasonable jury could conclude Sinceno violated his Fourth Amendment rights in two ways: (1) by failing to provide a warning prior to releasing K-9 Riko, and (2) by failing to remove K-9 Riko once Bullock was under control and compliant. Sinceno seeks dismissal of both claims.

The matter is before the Court for review of the Report and Recommendation of the United States Magistrate Judge suggesting Sinceno's motion in limine to exclude the opinion of Bullock's expert, Madalyn Wasilczuk (Wasilczuk), be granted, and his motion for summary judgment be granted in part and denied in part. Specifically, the Magistrate Judge recommends the Court grant summary judgment as to Bullock's constitutional claim concerning Sinceno's failure to remove his dog, K-9 Riko, once Bullock was under control and compliant, but deny summary judgment on Bullock's Fourth Amendment excessive force claim concerning Sinceno's failure to provide a warning prior to releasing K-9 Riko.

The Magistrate Judge further submits Hastings should be dismissed from Bullock's lawsuit.

## II.     FACTUAL AND PROCEDURAL HISTORY

Here is a brief recitation of the relevant facts in this case:

> On October 27, 2021, Sinceno was on patrol on Farrow Road in Richland County. Sinceno received a call from RCSD Community Action Team (CAT) Unit Sergeant Chris Mastrianni (Mastrianni).
>
> Mastrianni's unit had been conducting narcotics suppression in area hotels and had observed [Bullock], who was familiar to the CAT unit. Mastrianni believed [Bullock] to have one or more active warrants outstanding, but Mastrianni's vehicle was not equipped with a data terminal, so he asked Sinceno to confirm the status of the warrants. Sinceno confirmed through the National Crime Information Center . . . database [Bullock] indeed had one valid active warrant and was wanted by Federal Marshals.
>
> The record indicates . . . [Bullock's] active warrant concerned violating the terms of his supervised release, with officers involved in his apprehension discussing prior to his apprehension, via radio, whether a police dog should be used to arrest someone wanted for this crime. The record is unclear if Sinceno was part of this radio conversation.

2

Mastrianni asked that Sinceno respond to the area to assist with apprehending [Bullock]. Mastrianni testified . . . he relayed to Sinceno . . . [Bullock] may be armed, that previously law enforcement had been involved in a high-speed chase of [Bullock], and . . . [Bullock] had been in possession of three firearms.

Sinceno first observed [Bullock] operating a Chevy Impala with a paper tag with no markings stating any kind of registration or plate number. Sinceno also noted multiple cars on the road, pedestrians in the walkway, and nearby residential areas and apartment buildings with children walking around. Sinceno planned to see if [Bullock] would stop at a location, rather than catch him in motion. [Bullock] stopped his vehicle in front of the convenience store and immediately got out, and Sinceno followed.

The record indicates [Bullock] was carrying an over-the-shoulder black satchel bag that was, as Sinceno testified, large enough to conceal a pistol that would be easily accessible.

Sinceno's body camera shows him walking away from his vehicle with K-9 Riko on a leather lead. As Sinceno approached, [Bullock] was facing away from Sinceno and began moving toward the driveway along the left side of the convenience store.

In the span of roughly the next 50 seconds, Sinceno yelled "Police! Stop!", released K-9 Riko, chased down [Bullock], and secured him on the ground with his hands in handcuffs behind his back. At the beginning of these [fifty] seconds, Sinceno released K-9 Riko, who began pursuing [Bullock] down the driveway with the left wall of the store on [Bullock's] right. Sinceno admits he did not provide any warnings to [Bullock] before releasing the dog.

Report at 2-4 (citations omitted) (internal quotation marks omitted) (alteration marks omitted).

The Magistrate Judge filed the Report on March 7, 2025; Sinceno filed his objections on March 28, 2025; and Bullock filed his reply on April 11, 2025. The parties then participated in a mediation with the Magistrate Judge on July 7, 2025, which was unsuccessful.

3

Having carefully reviewed Sinceno's objections, the Court holds them to be without merit. It will therefore enter judgment accordingly.

Bullock fails to object to the Magistrate Judge's suggestions the Court grant Sinceno's motion in limine to exclude the opinion of Wasilczuk, grant summary judgment as to his Fourth Amendment claim regarding Sinceno's failure to remove K-9 Riko once he was under control and compliant, and dismiss Hastings from the lawsuit.  Thus, inasmuch as the Court agrees with the Magistrate Judge's discussion and recommendation on these matters, it will adopt them.

III.     STANDARD OF REVIEW

The Magistrate Judge prepared the Report in accordance with 28 U.S.C. § 636 and Local Civil Rule 73.02 for the District of South Carolina.  The Magistrate Judge makes only a recommendation to this Court.  The recommendation has no presumptive weight.  The responsibility to make a final determination remains with the Court.  *Mathews v. Weber*, 423 U.S. 261, 270 (1976).

The Court is charged with making a de novo determination of those portions of the Report to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions.  28 U.S.C. § 636(b)(1).

IV.     DISCUSSION AND ANALYSIS

A.     *The reasonableness standard*

"[A]ll claims . . . law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth

4

Amendment and its 'reasonableness' standard[.]" *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis omitted). "The operative question in excessive force cases is whether the totality of the circumstances justifies a particular sort of search or seizure." *Cnty. of Los Angeles, Calif. v. Mendez*, 581 U.S. 420, 427–28 (2017) (citation omitted) (internal quotation marks omitted) (alteration marks omitted).

"Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, . . . its proper application requires careful attention to the facts and circumstances of each particular case[.]" *Graham*, 490 U.S. at 396. (citation omitted) (internal quotation marks omitted) (alteration marks omitted). Put another way, "the question [is] whether the totality of the circumstances justified a particular sort of search or seizure." *Tenn. v. Garner*, 471 U.S. 1, 8–9 (1985).

Factors relevant to the merits of a constitutional excessive force claim include the severity of the crime, whether the suspect poses a threat to the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Id*.

"[T]he totality of the circumstances inquiry into a use of force has no time limit. Of course, the situation at the precise time of the [use of force] will often be what matters most; it is, after all, the officer's choice in that moment that is under review." *Barnes v. Felix*, 145 S. Ct. 1353, 1358 (2025). "But earlier facts and circumstances may bear on how a reasonable officer would have understood and responded to later ones." *Id*.

### B.    *Qualified immunity criticized*

This Court's decision in this matter centers on whether Sinceno is entitled to qualified immunity concerning his failure to give a warning prior to releasing K-9 Riko.

The qualified immunity construct, unsurprisingly, has been roundly criticized by both progressives and conservatives. *See, e.g., Kisela v. Hughes*, 584 U.S. 100, 121 (2018) (Sotomayor, J., dissenting) (lamenting the Court's "one-sided approach to qualified immunity" that "tells officers . . . they can shoot first and think later, and . . . tells the public . . . palpably unreasonable conduct will go unpunished"); *Ziglar v. Abbasi*, 582 U.S. 120, 159-60 (2017) (Thomas, J., concurring in part) ("Our qualified immunity precedents . . . represent precisely the sort of freewheeling policy choices . . . we have previously disclaimed the power to make. . . .  In an appropriate case, we should reconsider our qualified immunity jurisprudence."); *MacRae v. Mattos*, 106 F.4th 122, 131 (1st Cir. 2024) ("For those new to all this legal mumbo jumbo, qualified immunity is a judge-created doctrine, which lets public officials off the hook for money damages when they decide open legal questions in reasonable (but ultimately wrong) ways.").

Even so, the qualified immunity doctrine is part and parcel of the law of this circuit; and thus the Court is bound to faithfully apply it to the facts of this case.

### C.    *Qualified immunity explained*

Qualified immunity "is an affirmative defense" that "may be invoked by a government official sued in his personal, or individual, capacity." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 305–06 (4th Cir. 2006).  It serves to "shield[ ] government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983, 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Id*. at 306 (quoting *Wilson v. Layne*, 526 U.S. 603, 609 (1999)).  "[T]he [qualified] immunity of individual police officers is . . . to be proved by the defendant[.]"  *Logan v. Shealy*, 660 F.2d 1007, 1014 (1981).

"The doctrine of qualified immunity recognizes . . . public officials must sometimes make decisions in gray areas, where the law is unsettled or murky." *Doe v. Univ. of N.C. Sys.*, 133 F.4th 305, 315 (4th Cir. 2025) (citation omitted) (internal quotation marks omitted).  "In such situations, the fear of liability should not hamstring officials in the discharge of their duties.  Immunity attaches unless a right is 'sufficiently clear that every reasonable official would have understood . . . what he is doing violates that right.'"  *Id*. (quoting *Mays v. Sprinkle*, 992 F.3d 295, 301 (4th Cir. 2021).

As such, it gives "government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (citation  omitted)(internal quotation marks omitted).

Thus, in deciding whether a defendant is entitled to qualified immunity, the Court "must consider whether (1) the facts 'make out a violation of a constitutional right' and (2) whether that right was 'clearly established' at the time of the defendant[s'] alleged misconduct." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 238 (4th Cir. 2021) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).  The Court has discretion to address the prongs in whichever order it sees fit. *Pearson*, 555 U.S. at 236.

The Court "view[s] the facts in the light most favorable to the nonmoving party–here, [Bullock]–and recognize[s] . . . summary judgment may be granted only if 'no material facts are disputed' and the officers are 'entitled to judgment as a matter of law' on their qualified immunity claim."  *Hicks v. Ferreyra*, 965 F.3d 302, 308 (4th Cir. 2020) (quoting Fed. R. Civ. P. 56(a)).

### D.     *The "clearly established" prong discussed*

In Sinceno's objections, he contends "[t]he Magistrate Judge erred by failing to address the issue of qualified immunity regarding Sinceno's failure to give a warning before the release of K-9

7

Riko." Objections at 1. More specifically, according to Sinceno, she "erred by failing to address the [clearly established right prong] of the qualified immunity analysis." *Id*. at 3.

Bullock disagrees. He contends the Magistrate Judge "adequately addresses the issue of qualified immunity, including . . . the right to a warning was clearly established at the time Sinceno released the dog." Reply at 1 (internal quotation marks omitted).

Sinceno is mistaken; and, Bullock is correct. The Magistrate Judge did indeed address the clearly established right prong of the qualified immunity analysis.

Here is the relevant portion of the Magistrate Judge's quote of a Fourth Circuit case holding it was not clearly established the Fourth Amendment is violated when an officer releases a dog without a warning when the officer is facing an immediate threat:

> Even if [the officer's] deployment of the police dog without prior warning did violate the Fourth Amendment, the unlawfulness of his conduct was not clearly established on April 15, 2002. *Kopf [v. Wing*, 942 F.2d 265, 266 (4th Cir. 1991)] and *Vathekan [v. Prince George's Cnty*., 154 F.3d 173, 175 (4th Cir. 1998)] stand at most for the principle . . . the Fourth Amendment is violated when an officer who faces no immediate threat deploys a police dog without prior warning. . . . [T]hat was not the case here.

Report at 14 (quoting *Est. of Rodgers ex rel. Rodgers v. Smith*, 188 F. App'x 175, 182 (4th Cir. 2006)). The Magistrate Judge then went on to state, "[u]nlike in *Rodgers*, but as in *Kopf* and *Vathekan*, here, the evidence taken in light most favorable to [Bullock] establishes . . . Sinceno deployed K-9 Riko without prior warning and also without facing an immediate threat. These cases also establish[,] [when the evidence is taken in light most favorable to Bullock] . . . Sinceno did so in violation of [Bullock's] clearly-established Fourth Amendment rights." *Id*.

8

In *Kopf*, the Fourth Circuit reversed the granting of summary judgment in the defendant officers' favor where the officers tracked the suspects in an armed robbery to a narrow alley, and released a dog into the enclosure, allegedly, without warning. *Kopf*, 942 F.2d at 266.

Similarly, in *Vathekan*, the Fourth Circuit reversed a summary judgment ruling based on qualified immunity where an officer released his dog into a house where a suspected burglar may have been hiding, again allegedly, without warning, resulting in severe injuries to the homeowner. *Vathekan*, 154 F.3d at 175. The court explained qualified immunity was unwarranted because "it was clearly established [by *Kopf*] . . . failing to give a verbal warning before deploying a police dog to seize someone is objectively unreasonable and a violation of the Fourth Amendment." *Id.* at 179.

The Court notes *Est. of Rodgers* is an unpublished and divided 2006 opinion. A published Fourth Circuit opinion that came after that, *Melgar ex rel. Melgar v. Greene*, 593 F.3d 348 (4th Cir. 2010) stated in a divided opinion "the *Vathekan* and *Kopf* decisions . . . establish . . . a warning is necessary before releasing a dog[.]" *Id.* at 358. It fails to include the "immediate threat" language found in *Est. of Rodgers*, 188 F. App'x at 182. Thereafter, a concurring opinion in another unpublished and divided 2017 opinion, incorporated the "immediate threat" language. *Maney v. Garrison*, 681 Fed. Appx. 210, 228 (4th Cir. 2017) (Traxler, J., concurring).

Nevertheless, although we are looking to an unpublished and divided opinion as authoritative on the issue, the Court agrees there is an exception to the rule a "warning is necessary before releasing a dog," *Melgar*, 593 F.3d at 358; and that exception is when the officer is facing an "immediate threat[.]" *Est. of Rodgers*, 188 Fed. Appx. at 182.

After the Magistrate Judge discussed the relevant cases regarding whether Sinceno's release of K-9 Riko, without a warning, amounted to a Fourth Amendment violation, she then addressed this argument from Sinceno:

> there is no Fourth Circuit decision holding . . . it is a constitutional violation for an officer to deploy a police dog in circumstances similar to those presented here—the use of a police canine to intentionally apprehend a suspect who was wanted by the federal marshals; having an active warrant for his arrest; known to be very dangerous with multiple guns in his possession; not surrendering to the police and even going to great lengths to evade capture; and finally, a lone officer, without back up, watching the subject pull a gun from his waistband and run, [Bullock] does not properly allege a violation of clearly established law.

Report at 15 (citation omitted).

In considering the argument, the Magistrate Judge rightly stated, "the evidence, taken in light most favorable to [Bullock], . . . indicates[,] . . . at the time Sinceno released K-9 Riko, [Bullock] was running from Sinceno and Sinceno was not in immediate danger, notwithstanding Sinceno's repeated testimony . . . he saw [Bullock] draw a weapon prior to his release of the K-9." *Id*.

The Magistrate Judge then pointed to the evidence in the record that contradicted Sinceno's testimony he saw Bullock with a gun, specifically the body camera evidence from Mastrianni on the day in question:

> I don't think [Bullock] threw the gun. [Sinceno] don't think [Bullock] threw the gun. [Bullock] might've. [Sinceno's] like, 'I'm going to look at my camera.' He's like, 'But I didn't see a gun get thrown 'cuz I would've saw that.' So the gun's going to belong to someone."

*Id.* at 16 (citation omitted). Mastrianni further testified as follows:

> Q:    Okay. And—and it sounds like you were saying . . . he didn't see a gun? . . . He told you that?

10

> A:     Yea . . . With the initial interaction when we first—when I
> first go there and spoke to them, he didn't see the gun.
>
> Q:     Okay. Sinceno didn't see the gun?
>
> A:     Correct.

*Id*. at 17 (citation omitted).  Nevertheless, Sinceno still insists in his objections to the Report

"[t]hroughout his deposition, Sinceno unwaveringly and consistently affirmed–roughly 26 times–

. . . he saw [Bullock] reach into his waistband for a gun.  Thus, there is no factual dispute . . .

Sinceno perceived him retrieving a gun.  Objections at 4-5.

But, there is indeed a factual dispute between Sinceno's and Mastrianni's testimony about

the gun.  As Bullock correctly states in his reply, Sinceno's "position seems to rely entirely on [his]

testimony and version of events, which directly contradicts the video evidence and the testimony of

. . . Mastrianni.  Rather than addressing . . . Mastrianni's testimony, Sinceno ignore[s] it."  Reply at

5.

The discrepancies in Sinceno's testimony with the evidence from Mastrianni create a genuine

issue of material fact regarding what Sinceno objectively and reasonably perceived before releasing

K-9 Riko without providing a warning and whether he objectively and reasonably considered himself

to be in immediate danger.

Nevertheless, Sinceno still maintains "[a]n objectively reasonable officer in Sinceno's

position. . . .  would view [Bullock's] non-compliance [with his command to halt] and flight to be

consistent with the fresh intelligence . . . he was extremely dangerous and likely armed."  Objections

at 7.

As the Court stated earlier, when considering the merits of a constitutional excessive force claim, the Court will consider the severity of the crime, whether the suspect poses a threat to the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396.

Here, Sinceno was being sought for a supervised release violation, there is a genuine issue of material fact as to whether he had a gun and posed a threat, and he was attempting to flee from the officers. With these considerations, it is unclear to the Court at this junction whether the totality of the circumstances justified Sinceno's decision to release K-9 Riko without a prior warning.

Bullock was moving away from Sinceno when he released K-9 Riko. And the possibility of a threat of harm fails to equate to an objective and reasonable perception of an imminent and immediate danger, which is required to justify Sinceno's releasing K-9 Riko without first providing a warning. *See Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001) ("[A] simple statement by an officer . . . he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern. In short, an officer's use of force must be objectively reasonable based on his contemporaneous knowledge of the facts.").

As another district court aptly observed, "[a]n example of how defendants stretch 'immediate threat' to encompass 'possible threat,' in the Court's view, is the concern . . . [the officer] expressed . . . [the plaintiff] might have had a weapon hidden in the waistband of his pants. . . . [The officer] never saw [the plaintiff's] hands reaching towards his waistband as if to retrieve a weapon. Thus, the danger . . . [the plaintiff] had a weapon hidden in his pants cannot qualify as an 'immediate threat[.]'" *Beaver v. City of Federal Way*, 507 F. Supp. 2d 1137, 1146 (W.D. Wash. 2007).

Here, the Court is unable to say as a matter of law an objectively reasonable officer would have thought himself to be in immediate danger in the situation described above. As such, a jury could reasonably conclude an objectively reasonable officer who "didn't see the gun[,]" Report at 17, in these circumstances would not have felt an immediate threat and would thus not have released K-9 Riko without a warning.

"Disputed facts are treated no differently in this portion of the qualified immunity analysis than in any other context. If a plaintiff has alleged a clearly established right, summary judgment on qualified immunity grounds is improper as long as there remains any material factual dispute regarding the actual conduct of the defendants." *Buonocore*, 65 F.3d at 359–60 (citation omitted). *See ACLU of Md., Inc. v. Wicomico Cnty., Md.*, 999 F.2d 780, 784 (4th Cir.1993) (if "the defendant's entitlement to immunity turns on a factual dispute, that dispute is resolved by the jury at trial"). In fact, "qualified-immunity cases illustrate the importance of drawing inferences in favor of the nonmovant[.]" *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

Because there is a genuine issues of material fact here, this is sufficient to preclude summary judgment on qualified immunity grounds.

* * * * *

Sinceno's other arguments are so meritless as to make discussion of them unnecessary.

In sum, it is clearly established Fourth Circuit law: there is a Fourth Amendment right to a warning prior to the release of a police dog, except when the officer faces an immediate threat. Sinceno failed to provide the required warning. And, there is contradictory evidence in the record as to whether that was justified.

Given this conflicting evidence, a jury might reasonably reject Sinceno's testimony at trial and conclude he did not face an immediate threat when he released K-9 Riko without a prior warning.

Thus, for all these reasons, the Court will overrule Sinceno's objections to the Report.

### E.     *A question of fact*

In Bullock's reply, he "requests . . . the Court articulate that the basis for denying summary judgment in this case is a question of fact regarding what Sinceno knew at the time he released the dog without warning and . . . such grounds for denying the application of qualified immunity do not give rise to an interlocutory appeal."  Reply at 8.

The Court denies summary judgment on Bullock's Fourth Amendment excessive force claim against Sinceno for failing to provide a warning prior to releasing K-9 Riko because there is a question of fact regarding "whether [Sinceno] acted in an objectively reasonable manner in view of the existing law and facts available to him [when he released K-9 Riko]"  *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993).  This is a question of fact for a jury to decide.

"[A] defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial."  *Johnson*, 515 U.S. at 319-20.  Put another way, "the order of the district court denying qualified immunity to [the defendant] is not immediately appealable because the district court . . . determined . . . genuine disputes of material fact existed—a determination not subject to interlocutory appeal."  *Culosi v. Bullock*, 596 F.3d 195, 198 (4th Cir. 2010).

Thus, because this Court has determined genuine disputes of material fact exist here, this determination is not subject to interlocutory appeal.  *Id*.

14

**V.    CONCLUSION**

After a thorough review of the Report and the record in this case pursuant to the standard set forth above, the Court overrules Sinceno's objections, adopts the Report, and incorporates it herein. Therefore, it is the judgment of this Court (1) Sinceno's motion in limine is **GRANTED**; (2) his motion for summary judgment is **GRANTED IN PART AND DENIED IN PART** such that summary judgment is **GRANTED** as to Bullock's Fourth Amendment excessive force claim concerning Sinceno's failure to remove K-9 Riko once Bullock was under control and compliant, but **DENIED** on Bullock's constitutional claim concerning Sinceno's failure to provide a warning prior to releasing K-9 Riko; and (3) Hastings is **DISMISSED WITH PREJUDICE** from the lawsuit.

**IT IS SO ORDERED**.

Signed this 22nd day of September, 2025, in Columbia, South Carolina.

/s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE